Yes sir. Good morning your honors. I'm Michael Schein and I represent Rick and Nancy Tarnutzer in this matter. Before the court is an order dismissing my client's claims based on their failure to comply with an order compelling them to produce all their financial records from 2003 to the present. The order is reversible error primarily because the district court did not apply special California discovery rules which arise from the right to financial privacy under article 1 section 1 of the California Constitution. Why would California law apply at all to this this claim? As opposed to Washington. As opposed to Washington law. Well we did brief the specific contacts. Washington first off if you consider that the district court applies state conflicts of interest rules the district court originally there were actions brought in California and then in Washington. The California action was dismissed and then it was brought in Washington state court and removed. So both parties claims ended up in Washington. But we did brief in our brief the contacts analysis the Washington court would go through that the loans and the investments were California banks. They were sent from California. These are California residents with respect to the elder abuse claim. This is a California resident that we're talking about who is the elder in question. So the transactions have a weight of operative fact in California. So assuming for purposes of argument as a district court did that California law applied. Is it your argument that under financial records at all? Of course not and we have produced financial records. Isn't that the argument you made to the district court? You didn't say we'd like a protective order. You didn't say judge you should impose a lesser sanction. What you said is if you think we've got to produce this stuff judge dismiss the case so we can go up and argue it to these three judges you're now in front of. Yes judge. So it sure sounds to me your position is I'm not producing anything. Right and and I understand the court's perception on that but if you'll look carefully at our brief you'll see that we have a section devoted to detailing what we had already produced and we did produce. But what you produced was not in response to the request for production right? Correct. And with regard to the request for production you didn't which which do seem incredibly broad but that wasn't really your complaint. I mean your complaint wasn't it's incredibly broad and we should produce less. We should produce bank records for just a year or two or anything like that. It was simply we're not producing anything of that list aside from what you did produce. Well certainly in the original briefing about the motion to compel the argument was made that this is overbroad but then the order came along which was overbroad in a mandatory production of documents we'd already produced. But did you ever suggest what you would produce? Did you ever suggest a narrowing? Did you ever suggest a protective order or a eyes only order or anything else? The eyes order the eyes only order was a question raised by Judge Martinez later on in the proceedings I believe in connection with a stay on an emergency appeal here and the reason quite frankly that we were not comfortable with that was that there was this discovery memo as part of mediation or settlement memo that had been taken by our adversaries and put and that interrupted the normal trust that might be between counsels. So we felt that giving counsel an eyes only view of all these financial records would only enable counsel to bring more kinds of claims as part of if you will a family vendetta. So that wouldn't solve the problem. How would this case have played out if actually privilege for privacy had been applied? Well first the burden first the burden of showing a compelling need for the documents would rest with. Really? Don't the California cases suggest the contrary? California cases seem to suggest that one asserted in when in a litigation proceeding in discovery is requested that the party who seeks to protect information has the burden to show that it falls within the constitutional protection. Oh no I disagree your honor and we've cited all the cases for you in our brief. And I read all the cases and they don't seem to say look there's a there's there are two burdens here. One's of the discovery burden and I tend to agree with Judge Berzon that some of these requests were overbroad but that's not what we're here about. Once a judge orders discovery or once some of the other side seeks discovery don't you have the burden of demonstrating that what's sought falls is constitutionally protected? Well oh yes to show that it's constitutionally protected but that is covered by the fact that it's financial. That's my problem. Your argument is that anything that relates to finances is automatically protected by the California Constitution and thereby not subject to production. And I don't think the California courts have read that privacy provision that even assuming it applies that broadly what they've said is it may well be that there that some of this information is private and if so the parties have the burden and the court can then fashion an order to keep it private. Your position seems to be and that's the troublesome part of this case. Your position seems to be nope I'm relying on California law that's the end of it. Dismiss the case judge and let us go up and convince the Court of Appeals it's an absolute protection and I have problems with that broad position but not with the notion that the that the discovery requests were overbroad. So respond to that. Yeah yeah well I I'm a little surprised to hear your honor say that because I think we briefed it very thoroughly that a number of California cases that show that burden. Now there was a recent case that was just submitted yesterday that that attempts to cut that back but that had nothing to do with financial disclosure. We think the California rule is that when there's financial disclosure you make the prima facie showing that they're after financial documents and then the constitutional right of privacy kicks in and the burden shifts to the other side. But may I say one more thing your honor and that is that that's not the primary issue before this court. The issue is which law should apply and then it should go back to the district court and let the district judge tell us what here's my problem with what you said and so I need you to respond to it. Yes. To me it's apparent at least why some financial information is being sought. You're saying. Which we produced all the 2007 documents and the emails. Stop for a second. I'm talking about the requests for production. Okay. So what they say you say it's we're fighting about whether these are loans or investments and so they want to look at the financial records to see how they were characterized. They send you requests for production which may be overbroad but which are at least aimed in part at at finding that out. You didn't respond by saying oh these requests are fine we already gave you the information. You responded by saying we have a California privilege not to produce that information. We responded both ways your honor. I know. And then we got the order. I know but we're only here about the second response. Okay. And it seems to me that they did on the face of the request at least with respect to some of the find out how these were characterized in your own clients records. But that's not what they asked for your honor. I mean some of the stuff they've got in their brief if those had been the actual requests it would have been no problem. In fact we've already given them virtually all that information and they've deposed our client ad nauseum about that trust and the financial statements and all that. But you could always go back to the district judge and say judge we've already given them the information they requested you ought to lift the sanction. That's not what we're here about. We're here about whether or not your refusal based on California law is legally correct. Well and I'll. Isn't that. Do you disagree? Oh absolutely that we're here because the judge applied the wrong law and also the court judge even in not applying state law didn't even apply the federal rule properly. He applied the you know reasonably susceptible of leading to the discovery of admissible evidence standard. So if the court feels that perhaps federal rule should have applied then it's still an inappropriate standard and the standard of decision makes a difference. I mean as a matter of law we can't sit up here and say the judge would have had the same outcome if he'd applied a completely different verbal formula. So is it your position that the judge applied Washington law not California law? No it's our position the judge applied federal law incorrectly instead of California law correctly. What happened here with regard to the federal rule is that the rule changed essentially the day that the order came out. Yeah but that change is yeah the that was in the commentary that language that language has never been ever since 2000 the standard for evaluating a discovery request the reasonably susceptible test has been criticized by the commentators to the rules since 2000. But even more technically at the time he issued the order the new rule was in effect. The new rule was in place at the time he issued the order. And he quoted the old rule. He quoted the old rule. Yes your honor. If you have any questions I'd be delighted to answer them. If not I want to just briefly sum up. It is impossible to overstate the importance of the Erie decision and this is a quote from Wright and Miller. It does not announce a technical doctrine of federal court procedure or of the relationship between the federal government and the states. The California right to privacy is no mere procedural rule of discovery as the judge said it was. It is intimately bound up with the core substantive state law and must be applied under this courts Feldman decision and Erie. Failure to do so was reversible error. So unless your honors have any questions. Thank you very much. Thank you so much. Good morning your honors. I'm Spencer Hall. I represent Robert and Kim Warshower the F police. Now let me start up. It wasn't the district court's order wrong in two ways at least. One is that he did quote and apply the wrong federal rule if the federal rule applies. He did reference the wrong rule. All right. And secondly he said California privilege law doesn't apply and leaving aside the choice of law question for now which you didn't address. That's probably wrong. Respectfully I would disagree with the second point your honor. This is not a privilege issue. The federal rule says that except for privilege documents. Most of the courts that have looked at this question have applied the California privacy discovery rules. If when it was clear that it was California law to apply. Well I think there's two different concepts. It's my view of this. California has a constitutional right to privacy and that is a right. But it's different than a privilege. The federal rules specifically say that. Do you have any case actually rejecting that position? I mean there are a bunch that accept it. Do you have any that reject? Well I guess I read the cases even Feldman or any of the cases that were referenced describing it a privilege. They described it as a constitutional right. Whether it's a privilege or not a privilege. Whatever it is they have applied it. It's a substantive right isn't it? That's the allegations. It's a substantive right. The judge treated it as a procedural right. That's correct. That was probably incorrect wasn't it? No I don't think so your honor. No. Well suppose we thought it was. And suppose we thought it was. And given the fact that he clearly seemed to be applying the wrong federal rule. If it was a federal rule. Why don't we just send him back and tell him to do it all over again. That he's applying the wrong law. Well a number of reasons. Your honor and I can address it at the constitutional level or I can address it at the practical level. There were numerous motions for reconsideration and stays. And so he was told at the district court level that you've applied the wrong privacy rights. You applied the wrong federal rule. Judge Martinez was told all those things and asked to reconsider. And he looked at it again and he reconsidered and he said no. He said no what? No I didn't make a wrong ruling. Under any rule, under the new federal rule, under applying California law, I would make exactly the same ruling. And those are rulings that occurred after the appeal here or before the appeal? In other words, we had a failed mandamus action along the way. Right. They were before and I'm not sure that some of them weren't after. But I think they were before because they initially sought a stay. They first moved for reconsideration before Judge Martinez. Then they sought a stay from Judge Martinez. Then they sought a stay from the Ninth Circuit. And the Ninth Circuit dismissed the mandamus action. So I want to go back to the discovery requests. If we weren't here in this context where somebody in effect said please dismiss the case so I can get up on appeal. And we were only looking at the discovery requests. I'm not the district judge and I haven't gone through the case in a way the district judge might. They look incredibly broad to me. They seek all sorts of information and I'm having a hard time figuring out at least at the edges why it's relevant to this case. There are some things that are being sought that are clearly relevant. I don't have any doubt. What do we do in a case like that? What if we think the discovery requests are overly broad? What do you do in the context of this case? Yeah. Oh, you affirm Judge Martinez's decision and here's why. Well, but he dismissed. No. He was certainly working through. His discovery order is not appealable. It's not an appealable order. Correct? Right. So he makes a discovery order which I think may have been overbroad. The other side refuses to comply with it and then we're up here looking at the sanction of dismissal. Can we go back and look at whether or not the original ruling about production was correct? I don't think you can look. Here's the question I think, Your Honor, if you'll let me just say this. I don't think the question for this court is whether there was any document covered by Judge Martinez's order that should not have been covered, whether the order was overly broad. I think the question for this court is whether there were documents covered by Judge Martinez's order that within his discretion to order produced given whatever standard applies and whether this claimant didn't produce those documents. So your position is even if there was error, some error in the order because the judge ordered production of some stuff that's clearly relevant and because they absolutely refuse to produce that stuff, his sanctions are appropriate. Absolutely. Absolutely, Your Honor. Otherwise, trial courts couldn't function. In other words, the judge orders them to produce and I think Your Honor asked questions initially of opposing counsel. What they should have done is, for example, there's no dispute that financial statements were directly relevant characterizing these transactions. For 12 years or whatever number of years you were asking for. It was not 12 years. It was 2003 forward through the end. Go ahead. What time period are we talking about? At the time we did this, I think it was eight years. It was a time from the time the company was formed that was the subject of the dispute. To the present. We were in the trial court and he said. That was like 2015. So it was 12 years. Okay, the point still stands if I may. Why would you possibly need that 12 years? That was the period that we were litigating about 2003 to the present. That's what we were litigating about from a time perspective. But forget the time perspective. Apparently opposing counsel did make some motion or some argument in the court below that the requests were over broad. Did opposing counsel, was there any sort of dialogue about what they might be willing to even partially comply? Not that the court was involved in. In other words, before you move to compel discovery under the civil rules, you have meet and confers and you talk with counsel. So there were those kind of discussions. But my point was, is what your honor is addressing. They could have said, I think the time period is too long. I think there are too many documents. But we will produce our financial statements for three years. And they didn't say any of that to the court? No, they never. They just stood firm. And they said, we will not produce a single document you have ordered us to produce. We will live or die by absolute non-compliance. Did they say to the district court, gee, judge, we've already produced some of this stuff voluntarily? No, because they hadn't. And that is, the record is clear on that. The only thing they had produced were bank records. So for example, they said they invested $100,000, they produced the bank statement, and the check where they made the alleged investment. They said they made a loan, so they produced the check and the bank statement. That is completely different from the order that says, produce your financial statements so we can see how you are characterizing these transactions. You now call investments and you now call loans. But for example, the actions in this case took place in 2007. What are you going to do with the financial statements from 2003? What did we do with the statements? How they pertinent to anything? Well, they were important because there were two aspects in which these documents were relevant. One is, they were alleging transactions to be of a different character than they actually were. So that's one trend. But the other way is that Mrs. Tarnitzer was alleging that because her children only gave her a $2 million home and then didn't give her another $100,000, she was suffering anxiety because of inadequate funds. And she's a wealthy woman. And so we wanted a baseline. They had a medical examiner looking at her, at her so-called mental anxiety, because she was worried about being a poor woman. And she's a multimillionaire. And so for the time it issued... Once again, what did the 2003 financial... That was the time it issued in the case. No, it wasn't the time it issued in the case. The activities occurred in 2007. Well, okay. Some of them did. We felt the earlier time period was relevant. The analysis wouldn't change one bit, Your Honor, if you say everything before 2007 is irrelevant. I don't concede that. But the analysis wouldn't change a bit. Well, we'd be in a different situation if the other side were here saying we're willing to produce everything from 2007. Absolutely. Forward, but not from 2003, 2007. Let me go back to my very first question. You... Which is that the district court appears to have applied the wrong federal rule, if a federal rule applies, and rejected the California law out of hand, despite the fact that there is a lot of legal support for it. And you say, well, they brought it up and he rejected it. I want to know where... I just read his order in the motion denying the motion for reconsideration. And all it says is that they're reiterating legal arguments previously considered by the court. He doesn't acknowledge that he applied the wrong federal rule. And then he says that they didn't fully brief why they believe California law should apply, which the court reviewed and ultimately rejected. And then he says the issue doesn't change the court's analysis or result in any manifest legal error. That's what you're saying, was his consideration of the fact that he quite possibly applied the wrong standards? One of his decisions, Your Honor, and I apologize because there's multiple motions that were made after the original ruling. There's more than one motion denying the motion for reconsideration. But one of his rulings quotes Fellman, actually puts a quote from Fellman in there and says, if I apply the California test... It's in the sanctions order, I'm told. I'm wrong. It's in the sanctions order. It's in the sanctions order? Yes. It says, if I applied to California case, I can... Yes, I see. Do you think there was a substantive... Does the change in the federal rule make any difference? As I read the commentary to the amendments to rule 26, it essentially says, this is what the rule's been all along, but we want to make it clearer. I'm not sure there was really a change in the standards to be applied, even though the judge quoted the old rule. I don't think it made any difference, Your Honor. You're always supposed to look at the relative costs and relative benefits of this, and we're afraid judges haven't been. I was involved in the process, and I think the notion was that the change in rule 26 was just meant to emphasize what judges had perhaps not been applying in the previous language. So I'm not sure it's a change in the rule. I think it made no difference here, because I think as Judge Berzon was emphasizing, if you look at the time period, the failure here is the party who was ordered to provide discovery didn't cooperate with the court. They just said, I'm not going to produce a single document, not even the documents that everybody would concede were directly relevant. They wouldn't produce it for one year. They wouldn't produce it for six months. They wouldn't produce a single financial statement. In fact, the most infuriating thing here was that we had taken a deposition, and we had a transcript from a California case they were involved in. We didn't have the exhibit. We didn't have the financial statement, but we had testimony that said the financial statement characterized the transactions at issue in our case differently, and we asked, made the transcript of an exhibit to the deposition, and this is at ER 157, so it's indirect. It would make a whole lot more sense if you had just requested that document. Well, we thought more stuff was relevant, Your Honor. Once the judge rules, who controls? The litigant sitting out there saying, Your Honor, you've asked for 20 percent too many documents, so I don't have to do a thing. I think he probably asked for 80 to 90 percent too many documents. That's the problem here, but there were certainly some relevant documents. Right, and to me, that's what matters. The burden is on the litigant, not Judge Martinez. That's flipping the rules of the way this works. If they had come forward and done what they should, which is consistent with the Williams case in California, and said, we will produce the financial statements, we'll only produce them for this many years, we concede these are relevant, but here, Judge, we've got these other documents, and we're identifying them specifically, and we don't think we should have to produce these. This would be a different case. They'd have something to talk about, but they didn't do that, and they're trying to turn this into a complex constitutional case when it's their misbehavior that created the whole problem. All right. Thank you very much. Thank you. Sir, we'll give you one. I don't know if you have any time left, but we'll give you a minute of rebuttal. Do you want a rebuttal or not? Oh, I'd love some. All right. How about one minute? Please look at page 12 to 14 of the brief of appellant. I'm not going to recite it now, but it details what we did produce, which were the bank records regarding the 2007, both 2007 transactions. As I read the record, you produced the check and the bank record that showed that you wrote the check. Right. The underlying bank records. Right. What else? And emails, the email chains, and the correspondence between the parties regarding. You think that production made it completely unnecessary to produce any other financial information? We think that in light of, when we received an order that was not based on the correct legal standard, which should have been strict necessity, and then we raised that before the. It wasn't the question I asked you. Yeah, but. The question is, do you think that production, that limited production, meant that you were thereby excused from producing anything else that was relevant to this matter? Your Honor, no. Ultimately, we would produce, but when a litigant receives an order of the scale that your Honor's Judge Berzon has characterized as 90% too much stuff. Or 80%, whatever it was. And this is a hypothetical number. No, but I understand. But the litigant is put in a tremendously difficult position because we can't rewrite the order. You're not really. I mean, this happens every day in discovery. We have to do what Chris Gels says to do in the Ninth Circuit Civil Manual, which is what we followed, which was, what you should do, instead of letting the horse out of the barn door, which then makes it all moot by complying with the discovery order, you're supposed to stand on it and take a dismissal, and then you have an appeal. I mean, first you try the emergency appeal, which we did. Ordinarily, ordinarily, what would happen is you would, I mean, you see these responses all the time. This is overbroad. Well, that's how we did it. But reserving that objection, we are producing the following information. Oh, but we did do that, and it was what we'd already produced. You didn't do anything in response to the request for production, did you? You said we've produced enough. No, that's the sentence. You said we've produced enough. We don't care about your damn order, Judge. But we said that. And that's incidentally, we asked for broad material starting in 2005, and that's the response our opponents gave us. But that's not in front of us. I understand that. But I'm just saying we did make that response. But here's the difficulty. Judges issue discovery orders all the time. Sure. Sometimes they're overbroad. Yes. Litigants in those situations typically say, here's the stuff that's not overbroad. I'll produce it. As to the other stuff, I won't. And a judge then says, all right, I'll give you some sanctions. Or you can produce it in private or something else. But my problem with this case, and it's an essential one, is that you provoked you thought it was a good idea to get a dismissal. I don't care what manual you read. You said to the judge, dismiss the case so we can go up on appeal and argue about it. So I have a hard time on appeal considering the argument that maybe the order shouldn't have been so broad. And, Your Honor, if this had been a case in which his honor below had applied the correct legal standard and given us an overbroad order, that's the meat and potatoes case you're talking about in which we do that. Can I ask a question? Sure, of course. Go ahead. Finish. But this wasn't that case. This was a case in which his honor below was very adamant about not applying what we felt was the correct legal standard. And that's why we approached it differently. Otherwise, we wouldn't take an appeal to this court on just a question of a discretionary discovery order. Where are you getting the strict necessity rule under California law? Where are you getting that from? Well, I've cited all the cases. There's Lance and Davis v. Leal and the other cases. What about the one that came out the other day? They all say otherwise. They say essentially it's a balancing test. But, Your Honor, we haven't had a chance to address that case. It just, you know, you just sent it in yesterday. But if you want me to address it, what I would say first is that it had nothing to do with financial discovery. It was a wage and hour claim in which the right to privacy is much diminished because the contact information of fellow employees is what the plaintiff was seeking. And the court expressly says that in that instance most of those employees would like the plaintiff to find their contact information in order to be able to help them out with a wage claim that will go in their favor. So the right to privacy is much lower in that circumstance. And then the court does specifically say in dicta that there are core privacy concerns such as medical records and financial records where a different standard might apply. So we have yet to see how that California Supreme Court case gets litigated out on the key issue of discovery into financial records. Okay. Thank you very much. Thank you very much. Thank you both. The case of Warshower v. Tarnitzer is submitted.
judges: Thacker, Berzon, Hurwitz